UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENAN ZAKARIA,

    Plaintiff,

v.

MNP CORPORATION,

    Defendant.
_____/

Case No. 15-cv-14337
Hon. Matthew F. Leitman

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #12)

In June 2015, Defendant MNP Corporation ("MNP") fired Plaintiff Kenan Zakaria ("Zakaria") as part of a reduction in force. In this action, Zakaria alleges that his firing violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §12112, the Michigan Persons with Disabilities Civil Rights Act (the "PWDCRA"), M.C.L. 37.1202, and the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. §§ 2614-15. MNP now moves for summary judgment on all of Zakaria's claims (the "Motion"). (*See* ECF #12.) For the reasons explained below, the Court grants the Motion with respect to Zakaria's ADA and PWDCRA claims and denies MNP's motion with respect to Zakaria's FMLA claims.

# I

## A

From May 27, 2013, until June 2015, Zakaria worked for the Beta Steel Group ("Beta"), an affiliate of MNP. (*See* Def.'s Resp. to Interrogs., ECF #14-6 at Pg. ID 188-190; Samantha Maziasz Dep. at 8, ECF #14-3 at Pg. ID 169.) Zakaria began his employment in Beta's shipping and receiving department but Beta later transferred him to its quality lab. (*See* Zakaria Dep. at 16, ECF #14-4 at Pg. ID 174.)

Throughout his time at MNP, Zakaria suffered from a thyroid condition. (*See id.* at 33, 43, ECF #14-4 at Pg. ID 179-80.) In May and June of 2015, Zakaria needed to attend medical appointments due to his thyroid condition. To ensure that he would be able to receive time off to attend these appointments, he asked his direct supervisor, James Eggleton ("Eggleton"), for the paperwork necessary to request leave under the FMLA. (*See id.* at 26-28, ECF #14-4 at Pg. ID 177.) But Eggleton did not respond to Zakaria "in a timely fashion." (Eggleton Dep. at 17, ECF #14-2 at Pg. ID 164).

On June 18, 2015, Zakaria emailed Jim Dennis ("Dennis"), Beta's plant manager, to request the FMLA paperwork that Eggleton failed to provide him. (*See* Zakaria Dep. at 28-29, ECF #14-4 at Pg. ID 177-78; June 18 email, ECF #14-14.) In the email, Zakaria told Dennis that "with the health problems [I] have been having[,] [I] am worried about losing my job." (June 18 email, ECF #14-14.) When

Dennis received Zakaria's email, he did not know anything about the health problems that Zakaria may have had, and he did not ask Zakaria any questions about those problems because he did not regard the problems as his "business." (Dennis Dep. at 30, ECF #14-13 at Pg. ID 222.) Dennis did send Zakaria the FMLA paperwork. (*See id.* at 31, ECF #14-13 at Pg. ID 222.) However, as detailed below, Zakaria never had the opportunity to submit the completed FMLA paperwork.

B

In early 2015, Beta's leadership decided that the company was overstaffed. (*See id.* at 22-23, ECF #14-13 at Pg. ID 220.) During a management meeting, Beta's President, Scott Bernstein ("Bernstein"), and another senior official, Greg Barber ("Barber"), discussed the overstaffing with Beta's managers. (*See id.*). This discussion did not focus on specific units of the company. (*See id.* at 23-24.) Instead, it was "more of a generic we have too much head count." (*Id.*)

After the meeting, Dennis took the lead in reducing Beta's head count, and he involved Anne Ventimiglio-Esser ("Ventimiglio-Esser"), MNP's Vice President of Human Resources, in that process. (*See id.* at 24-26, ECF #14-13 at Pg. ID 220-21.) During a meeting with Ventimiglio-Esser at her office in Utica, Dennis and Ventimiglio-Esser discussed the "parameters" for the reduction in force. (*Id.* at 24-5, ECF #14-13 at Pg. ID 220-21.) They decided that attendance would be the sole criteria considered when determining which employees would be let go. (*See* Dennis

Dep. at 25, ECF #14-13 at Pg. ID 221; Ventimiglio-Esser Dep. at 8, ECF #14-19 at Pg. ID 241.) Simply put, they decided to fire the employees with the worst attendance record.

Ventimiglio-Esser says that she then used MNP's "time program" to create a spreadsheet showing the active employees with "the highest attendance points" (the "Selection Document"). (Ventimiglio-Esser Dep. at 22-23, ECF #14-19 at Pg. ID 244.) The Selection Document that Ventimiglio-Esser claims she created is attached as Exhibit B to MNP's reply brief. (*See id.* at 22-23, ECF 14-19 at Pg. ID 22-23; Def.'s Reply Br., ECF #16 at Pg. ID 277, confirming that Exhibit B is the Selection Document referenced by Ventimiglio-Esser.) According to Ventimiglio-Esser, she and Dennis used the Selection Document to identify the employees with the worst attendance record. (*See* Ventimiglio-Esser Dep. at 23, 29, ECF #14-19 at Pg. ID 244, 246.) Ventimiglio-Esser maintains that the Selection Document identified Zakaria as one of the three MNP employees with the worst attendance records (*see id.* at 22-23, ECF #14-19 at 244), and Dennis and Ventimiglio-Esser insist that they decided to fire Zakaria because he was listed among the three worst attendance offenders on that document. (*See id.* at 18-19, ECF #14-19 at Pg. ID 243; Dennis Dep. at 27, ECF #14-13 at Pg. ID 221.) They made the decision to fire Zakaria on June 29, 2015. (Def.'s Resp. to Interrogs., ECF #14-6 at Pg. ID 190.)

As described below, there is a serious question on this record as to whether Dennis and Ventimiglio-Esser relied on the Selection Document as they contend.

## C

Zakaria filed this action in December 2015. Zakaria asserts three claims against MNP: (1) Unlawful termination in violation of the ADA; (2) Unlawful termination in violation of the PWDCRA; and (3) Unlawful interference and retaliation in violation of the FMLA. (*See* Compl., ECF #1.) MNP moved for summary judgment on November 4, 2016. (*See* ECF #12.) Zakaria responded on November 28, 2016. (*See* ECF #14.) The Court held a hearing on MNP's motion for summary judgment on March 1, 2016 and held a telephonic continuation of the hearing on March 29, 2016.

## II

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that

party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-52. Indeed, "[c]redibility determinations, the weighing of the evidence and the drafting of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 255.

## III

### A

As noted above, Zakaria brings claims under three anti-discrimination statutes: the ADA, the PWDCRA, and the FMLA. Both parties have asked the Court to apply the *McDonnell-Douglas* burden shifting framework to all of Zakaria's claims.[1] (*See* S.J. Motion, ECF #12 at Pg. ID 75; Pl.'s Resp. Br., ECF #14 at Pg. ID 147.)

Under the *McDonnell-Douglas* framework, Zakaria bears the initial burden of establishing a prima facie case of discrimination. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891, 897 (6th Cir. 2016). If he is able to satisfy this requirement, the burden shifts to MNP to put forth evidence of a legitimate, non-discriminatory reason for Zakaria's termination. *See id.* at 892. If MNP can provide such a reason,

---

[1] The *McDonnell-Douglas* approach is used when a plaintiff lacks direct evidence of discrimination and instead relies only upon circumstantial evidence to support his claims. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016).

6

the burden shifts back to Zakaria to show that MNP's proffered reason is a pretext for unlawful discrimination. *See id*.

As explained below, Zakaria has not established a prima facie case for his ADA and PWDCRA claims, and thus, MNP is entitled to summary judgment on these two claims. However, MNP is not entitled to summary judgment on Zakaria's FMLA claims because, on the current record, there are substantial and unanswered factual questions concerning MNP's proffered reason for firing Zakaria.

**B**

Under Title I of the ADA,

> No covered [employer] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. §12112.[2] Similarly, under the PWDCRA, "an employer shall not" "discharge or otherwise discriminate against an individual . . . because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. §37.1202.

To establish a prima facie case of discrimination under the ADA or PWDCRA, a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified

---

[2] MNP does not dispute that it is a "covered employer" under the ADA.

7

for the position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the employer knows or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *See Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011).[3] Where, as here, a disability discrimination claim is based on termination arising out of a work force reduction, the Court will "modif[y] the 'replacement' element of the prima facie case, allowing a plaintiff to substitute 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Kvintus v. R.L. Polk & Co.*, 194 F.3d 1313 (table), 1999 WL 1000824, at *4 (6th Cir. 1999) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)); *see also Geiger v. Tower Automotive*, 579 F.3d 614, 623 (6th Cir. 2009) (applying the same principle to the Age Discrimination in Employment Act).

MNP argues that Zakaria has failed to establish his prima facie case under the ADA and PWDCRA because he has not shown that the decision makers knew of his

---

[3] "The PWDCRA 'substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, but not always, resolve the plaintiff's PWDCRA claim.'" *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002). Here, both parties ask the Court to analyze Zakaria's ADA and PWDCRA under identical standards. (*See* S.J. Motion, ECF #12 at Pg. ID 75; Pl.'s Resp. Br., ECF #14 at Pg. ID 151.)

disability.[4]  The Court agrees.  Dennis and Ventimiglio-Esser made the decision to fire Zakaria, and there is no evidence in the record that either of them knew of his disability.  Indeed, Zakaria does not contend that either of them knew about his condition.  When asked to identify the MNP employees who did know about his thyroid condition, Zakaria did not identify either Dennis or Ventimiglio-Esser. (*See* Zakaria Dep. at 20-22, ECF #14-4 at Pg. ID 175-76.)  Because the decision makers did not know about Zakaria's disability, he cannot prevail on his claims under the ADA and PWDCRA. *See Nilles v. Givaudan Flavors Corp.*, 521 Fed. App'x 364, 368 (6th Cir. 2013) ("[A]n employee cannot be considered to have been fired 'on the basis of disability' unless the individual decision maker who fired the individual had knowledge of that disability.")

Zakaria counters that another MNP employee, Mark Baker, did know about his thyroid condition and participated – along with Dennis and Ventimiglio-Esser – in the decision to fire him. (Pl.'s Resp. Br., ECF #14 at Pg. ID 154.)  Zakaria relies on Baker's testimony that he was "involved" in the decision to terminate Zakaria. (*Id.*)  But while Baker may have *believed* that he was involved in that decision, the

---

[4] Zakaria does not argue that either Dennis or Ventimiglio-Esser should have known about his disability.  Instead, as described above, he argues that another MNP employee, Mark Baker, knew about his condition and participated in the decision to fire him.  The Court addresses – and rejects – that contention below.

9

record does not contain any evidence that he, in fact, played any role in Zakaria's firing.

Baker's belief that he was involved in the decision to fire Zakaria stemmed from a conversation that Baker had with Bernstein and Barber concerning Beta's overstaffing problem. (*See* Baker Dep. at 17-20, ECF #14-8 at Pg. ID 202.) Baker testified that he told Bernstein and Barber that Beta should fire the employees with the worst attendance record, and he appears to believe that they followed his advice. (*See id.*) However, Bernstein and Barber did not make the decision that Beta would fire the employees with the worst attendance records and did not decide to fire Zakaria. Dennis and Ventimiglio-Esser did. And, critically, there is no evidence in the record that Bernstein and Barber told Dennis and/or Ventimiglio-Esser about Baker's recommendation, nor is there any evidence that Dennis and/or Ventimiglio-Esser ever learned of Baker's recommendation. Accordingly, there is no evidence connecting Baker's recommendation to Zakaria's firing. Thus, Baker's alleged knowledge of Zakaria's disabling condition does not satisfy the knowledge element of Zakaria's prima facie case under either the ADA or PWDCRA, and Zakaria's claims under these statutes fail as a matter of law.

## C

### 1

"The FMLA enables employees covered by the Act to take up to twelve weeks of leave per year for various purposes specified in the statute, including the employee's own 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Bryson v. Regis Corp.,* 498 F.3d 561, 569-70 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D).) "At the expiration of the employee's leave period, []he must be reinstated to [his] position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Id.* (citing 29 U.S.C. § 2614(a)(1)).

There are two theories for recovery under the FMLA:

> The 'entitlement' or 'interference' theory arises from § 2615(a)(1), which states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter,' and from § 2614(a)(1), which provides that 'any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position.' The 'retaliation' or 'discrimination' theory arises from § 2615(a)(2), which provides that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'

*Arban v. W. Pub. Corp.,* 345 F.3d 390, 400-01 (6th Cir. 2003).

Zakaria brings claims under the interference and retaliation theories, and MNP does not dispute that Zakaria has established a prima facie case under each theory. Therefore, the Court will move directly to analyzing MNP's proffered reason for firing Zakaria.

**2**

MNP has offered a non-discriminatory reason for firing Zakaria – namely, that it was downsizing its workforce and it fired Zakaria because he had the third worst attendance record during the twelve months prior to the layoffs. (*See* S.J. Motion, ECF #12 at Pg. ID 75-77.) However, on this record, there is a material factual dispute as to whether this reason was a pretext for discrimination in violation of the FMLA.

As an initial matter, there is a question as to whether there was a "basis in fact" for MNP's asserted justification for firing Zakaria. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014) (holding that plaintiff can show pretext by demonstrating that an employer's proffered reason for an adverse employment action has "no basis in fact"). When the evidence is viewed in the light most favorable to Zakaria, MNP's explanation as to how it identified Zakaria as among the worst attendance offenders does not add up. Ventimiglio-Esser says that she relied exclusively upon the Selection Document – which listed employees and attendance points – when she identified Zakaria as one of Beta's

three active employees with the worst attendance records. (*See* Ventimiglio-Esser Dep. at 22-23, ECF #14-19 at Pg. ID 244.) But there are two reasons to question that contention. First, the Selection Document appears to have been created *after* Zakaria was terminated. Indeed, the document purports to be a list of "All Inactive and Terminated" employees. (*See* Selection Document, ECF #16-3.) Because the Selection Document was apparently created after Zakaria's termination, Ventimiglio-Esser and Dennis could not have relied upon it, as they claim, in deciding *whether* to terminate Zakaria's employment. Second, because the Selection Document (1) reflects the attendance status of employees who are no longer with Beta and (2) says nothing about the attendance status of active employees, Ventimiglio-Esser and Dennis could not have used it, as they claim, to identify the active employees with the worst attendance records who would be terminated. For these reasons, there is a real question as to whether Ventimiglio-Esser and Dennis arrived at the decision to fire Zakaria in the manner they claim and whether there is a basis in fact for their conclusion that Zakaria had one of the three worst attendance record among active employees at the time of the downsizing.[5]

---

[5] During the March 29, 2017, hearing, MNP's counsel attempted to explain the inconsistency between the "Selection Document" and MNP's proffered explanation for firing Zakaria. However, the explanation relied upon evidence outside the record, and the Court cannot consider that evidence.

Moreover, there was a close temporal proximity between Zakaria's email to Dennis requesting FMLA paperwork and the decision to fire Zakaria. Zakaria sent the email to Dennis on June 18, 2015, and Dennis and Ventimiglio-Esser made the final decision to fire him about one week later. (*See* Dennis Dep. at 27, ECF #14-13 at Pg. ID 221; Def.'s Resp. to Interrogs., ECF #14-6 at Pg. ID 188-190.) While such close temporal proximity, standing alone, is not enough to establish pretext, "[s]uspicious timing … is a strong indicator of pretext when accompanied by some other independent evidence." *Amos v. McNairy County*, 622 Fed. App'x 529 (6th Cir. 2015) (citing *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012)). Coupled with the above-described evidence suggesting that MNP's proffered reason for firing Zakaria had no basis in fact, the close temporal proximity of Zakaria's FMLA request to his termination is sufficient to create a material factual dispute with respect to pretext. Accordingly, MNP is not entitled to summary judgment on Zakaria's claims under the FMLA.[6]

---

[6] While there is evidence that MNP made the decision to fire the employees with the worst attendance records before Zakaria emailed Dennis requesting FMLA paperwork (Ventimiglio-Esser Dep. at 8, ECF #14-19 at Pg. ID 241), the evidence cited above, when viewed in Zakaria's favor, indicates that the decision *to fire Zakaria* was made shortly after he sent his email to Dennis. That decision is the relevant one for purposes of his FMLA claim.

# IV

For the reasons stated above, **IT IS HEREBY ORDERED** that the Motion (ECF #12) is **GRANTED** with respect to Zakaria's claims under the ADA and PWDCRA and **DENIED** with respect to Zakaria's claims under the FMLA.

s/Matthew F. Leitman<br>MATTHEW F. LEITMAN<br>UNITED STATES DISTRICT JUDGE

Dated:  April 11, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 11, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda<br>Case Manager<br>(313) 234-5113